2004-NMSC-022

94 P.3d 768

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Luis ROSALES, Jr., Defendant–Appellant.**

No. 27,949.

Supreme Court of New Mexico.

June 3, 2004.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

**OPINION**

MINZNER, Justice.

{1} Defendant Luis Rosales, Jr., appeals from a judgment and sentence entered following his convictions of both first-degree murder, contrary to NMSA 1978, § 30–2–1(A)(1) (1994) (deliberate intent murder), and conspiracy to commit tampering with evidence, contrary to NMSA 1978, §§ 30–22–5 (1963, prior to 2003 amendment) (tampering with evidence) and 30–28–2 (1979) (conspiracy). Defendant received a sentence of life imprisonment plus eighteen months. We have jurisdiction in this case pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12–102(A)(1) NMRA 2004. We hold, under the facts of this case, the district court did not abuse its discretion in excluding the testimony of two defense witnesses that may have established a third person's motive to commit the murder for which Defendant was charged. While the evidence was relevant, Defendant's insufficient offer of proof prevents us from determining on direct appeal whether the district court properly excluded the evidence as hearsay. Therefore, we affirm Defendant's convictions.

**I**

{2} At Defendant's trial, Sammy Martinez was an important witness for the prosecution. Martinez testified that he was at his auto shop on January 17, 2002. Also present at Martinez's auto shop were Defendant, Gabriel Sedillo, Peter Alcorta, and Wayne Sharp ("the victim"). The victim wanted to borrow Martinez's Chevrolet Blazer to go check on his unemployment payment. Martinez saw Defendant and the victim leave together, and he assumed Sedillo accompanied them because Sedillo was no longer around the shop. Defendant and Sedillo returned some time later, and Martinez noticed blood inside the vehicle. When Martinez asked about the blood and the victim, Sedillo said something to the effect that "[the victim] is not here anymore."

{3} Martinez testified that the three men then left the shop, because Defendant and Sedillo wanted to go to the lake to clean the vehicle. In the vehicle, Defendant confessed to Martinez that he had killed the victim. After dropping Defendant off at a friend's house, Martinez and Sedillo went to a car wash to clean the Blazer. Martinez cleaned the vehicle. Blood would not come off some of the upholstery, so later that night Sedillo, Alcorta, and Martinez cut the upholstery out of the Blazer. Sedillo put the upholstery in a plastic bag. The group left the shop and went to a creek where Sedillo appears to have disposed of the plastic bag and one of the seat cushions from the Blazer. A few days after the murder, Martinez voluntarily went to the police and described what happened. Martinez ultimately pleaded guilty to two counts of tampering with evidence and was placed on probation for two years. As a condition of his probation, Martinez agreed to testify against Defendant and Sedillo.

{4} At trial, Defendant attempted to create reasonable doubt as to whether he committed murder by raising the possibility that it was Martinez who had killed the victim. The evidence showed the murder had taken place in Martinez's vehicle. Martinez's pocket knife was used to cut the upholstery out of the Blazer. The police suspected the knife used by Martinez could have also been the murder weapon that was never recovered. Martinez told the police he had thrown the knife out of his vehicle. At trial, however, Martinez testified that the knife was left in the Blazer when he brought the vehicle to the police to be searched. Also, Martinez actively participated in covering up the murder by helping clean the Blazer and assisting

Sedillo in disposing of upholstery from the vehicle.

{5} In support of his theory that Martinez actually murdered the victim, Defendant presented the testimony of Leticia Rodriguez, a roommate of the victim at the time he was murdered. Rodriguez testified about Martinez's relationship to the victim. She stated there was tension in the relationship and a couple of times she heard Martinez make threats against the victim's life. A couple of weeks before the murder, Rodriguez recalled Martinez stating with respect to the victim, "One of these days I'm going to take that motherf——r for a ride." Rodriguez understood this statement to be a threat because Martinez's tone was serious and he appeared "pissed off" when he made the statement. Rodriguez testified that Martinez had made similar remarks on several other occasions, such as "One of these days I'm going to get rid of that motherf——r."

{6} Although the district court permitted Defendant to present evidence of the animosity between Martinez and the victim, the court excluded testimony from Rodriguez and Candace Campbell regarding statements they allegedly heard the victim make concerning a debt Martinez owed him. The State moved to exclude any testimony by either of those two witnesses pertaining to statements that the victim might have made a few weeks prior to the murder about Martinez owing him money and the reason for the supposed debt. The State argued the testimony was hearsay and was not admissible under any exception. Defendant responded that the statements were not hearsay—they were not being offered to prove the existence of a debt, but were offered instead as evidence of a motive for Martinez to murder the victim. Defendant's theory was that Martinez apparently found it more profitable to kill the victim than pay him back the money he owed him. The district court excluded the statements, because they were "too far removed" and "too remote."

## II

{7} On appeal, Defendant argues that the district court erred by refusing to allow Rodriguez and Campbell to testify to statements made by the victim concerning a debt Martinez owed him. Defendant argues that his constitutional right to present a defense was violated by the district court's ruling. A criminal defendant has a fundamental right under the Due Process Clause of the United States Constitution "to present his own witnesses to establish a defense." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, that right has never been absolute or unlimited. The United States Supreme Court has held that a defendant's interest in presenting evidence may at times "bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Specifically, state rules of evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting *Rock,* 483 U.S. at 56, 107 S.Ct. 2704).

{8} Our traditional rules of relevancy and hearsay are designed to ensure reliability in the fact-finding process and are not arbitrary or disproportionate to this legitimate purpose. *See State v. Sanders,* 117 N.M. 452, 459–60, 872 P.2d 870, 877–78 (1994) ("A defendant's right to present evidence on his own behalf is subject to his compliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' ") (quoting *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). The United States Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Therefore, the evidence complained of by Defendant is not admissible unless it satisfies our relevancy and hearsay rules.

{9} We believe the district court might have excluded the evidence in this case be-

cause it appeared to be hearsay and because no exception seemed to apply. That was the State's argument, so it would be reasonable to believe the district court's decision reflected that analysis. The words the district court used, however, the reference to "remoteness," make us uncertain whether the ruling, at least in part, reflected a sense that, on balance, the probative value of the statements was outweighed by other considerations. We consider the latter possibility first, because "we may affirm on grounds upon which the trial court did not rely unless those grounds depend on facts that [the opposing party] did not have a fair opportunity to address in the proceedings below." *State v. Torres*, 1999–NMSC–010, ¶ 22, 127 N.M. 20, 976 P.2d 20. There is authority in other jurisdictions that would support affirmance on this ground.

## A

██ {10} A number of courts in other jurisdictions have held that the motive of a third person is not admissible, unless there is at least some other evidence to connect the third person to the offense. For example, the Alaska Supreme Court has held that evidence of a third party's motive is only admissible if the defense produces other evidence that tends to directly connect the third person with the commission of the crime charged. *Smithart v. State*, 988 P.2d 583, 586 (Alaska 1999); *accord State v. Hill*, 196 Conn. 667, 495 A.2d 699, 703 (1985) (same rule). The rationale generally offered for such a rule is that the evidence could confuse the issues and waste judicial resources. *See Smithart*, 988 P.2d at 586–87 ("[I]f evidence of motive alone upon the part of other persons were admissible ... in a case involving the killing of a man who had led an active and aggressive life it might easily be possible for the defendant to produce evidence tending to show that hundreds of other persons were possible suspects in the murder.") (quotation marks and quoted authorities omitted).

{11} We believe, though, that a special rule of admissibility is not required for evidence of a third person's motive to commit the offense for which the defendant has been charged. Our general rules of relevancy are sufficient to decide the issue. Rule 11–402 NMRA 2004 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the constitution, by statute, by these rules or by other rules adopted by the supreme court." Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11–401 NMRA 2004. Defendant argues that any evidence implicating a third person in the victim's murder has a tendency to make it less probable Defendant committed the murder. We agree. *See Joyner v. State*, 678 N.E.2d 386, 389 (Ind.1997) ("Evidence which tends to show that someone else committed the crime logically makes it less probable that the defendant committed the crime, and thus meets the definition of relevance in Rule 401."). Evidence that Martinez may have murdered the victim to get out from under a debt is probative of Defendant's guilt or innocence.

██ {12} However, even relevant evidence may be excluded under Rule 11–403 NMRA 2004. That rule addresses the concerns for admitting third person motive evidence expressed by the Alaska Supreme Court in *Smithart*. When determining whether the defendant's evidence of a third person's motive to commit the offense for which he or she is charged, the district court may properly conclude that the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 11–403. The district court "is vested with great discretion in applying [Rule 11–403], and it will not be reversed absent an abuse of that discretion." *State v. Chamberlain*, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991).

{13} On one side of the Rule 11–403 balancing test, we consider the probative value of the evidence at issue. Evidence that Martinez had a motive to murder the victim to get out from under a debt is highly probative on the issue of Defendant's guilt or innocence. The statements at issue appear to

have occurred only a couple of weeks before the murder. At trial, other evidence showed that Martinez had recently threatened the life of the victim, the victim was killed in Martinez's vehicle, and the murder weapon might have been a pocket knife owned by Martinez. The motive of Martinez to murder the victim, though, was a missing piece of evidence that undercut Defendant's theory of the case. In its closing argument to the jury, the State seized upon the omission of a motive to refute Defendant's theory:

> [T]hat was certainly a very eloquent closing by [Defendant's attorney], but now let's get back to the facts. [Martinez] had a motive. What motive was that? Anybody remember a motive [Martinez] had? Yeah, he was a little perturbed about his vehicle having been brought back in that condition but that was afterwards ladies and gentlemen. What motive did [Martinez] have beforehand that might have gotten him involved in this or is that something else that was covered up in this apparent conspiracy between the Sheriff's Office and [Martinez] to frame this poor Defendant over here.
>
> . . .
>
> Are we to believe that [Martinez] killed [the victim] simply because that's his vehicle? That is what [the defense] is asking you to believe ladies and gentlemen in all of this. All of that fancy talk, all that going round and round in circles, [the gist] of what the defense is saying is [Martinez] must have killed [the victim] because it's his vehicle. That's all they're saying.

{14} On the other side of the Rule 11–403 balancing test, we consider whether other considerations substantially outweighed the probative value of the evidence. The other evidence of motive the district court permitted is an indication that additional evidence of motive would have been helpful, rather than confusing. Furthermore, we believe that testimony regarding Martinez's motive would not have caused undue delay in the case or have been a waste of time. The proffered testimony does not appear to be particularly complex or time-consuming to present. Under these circumstances, Rule 11–403 does not afford an opportunity to

affirm the district court on an alternative ground.

**B**

{15} We next consider whether the testimony was properly excluded as hearsay. Under Rule 11–802 NMRA 2004, "[h]earsay is not admissible except as provided by [the Rules of Evidence] or by other rules adopted by the supreme court or by statute." "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 11–801(C) NMRA 2004. "[I]f an out-of-court statement is offered in evidence merely for the purpose of establishing what was said at the time, and not for the truth of the matter, the testimony is not hearsay." *State v. Reyes*, 2002–NMSC–024, ¶ 29, 132 N.M. 576, 52 P.3d 948.

{16} Defendant argues that the testimony of Rodriguez and Campbell was not offered for the truth of the matter asserted, that is, that Martinez actually owed the victim money. Rather, Defendant asserts that the testimony was being offered as evidence of Martinez's motive to murder the victim. In *State v. Johnson*, 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983), we reaffirmed the "longstanding rule" of *State v. Alberts*, 80 N.M. 472, 474–75, 457 P.2d 991, 993–94 (Ct.App.1969) (emphasis added), where the Court of Appeals noted:

> Extrajudicial statements or writings may properly be received into evidence, not for the truth of the assertions therein contained, or the veracity of the out-of-court declarant, but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, *motive*, effect on the hearer or reader, and many others.

*See also McCord v. Ashbaugh*, 67 N.M. 61, 64, 352 P.2d 641, 643 (1960) ("When an extrajudicial statement or writing aids in proving knowledge, belief, good faith, reasonableness or motive, it is admitted as circumstantial evidence thereof.").

{17} If it had been shown that Martinez heard the victim's statements, then Defendant's theory that the evidence was not being offered for its truth would have been

clearer. Evidence is not hearsay if admitted as circumstantial evidence of the motive of the listener. *See* 2 Kenneth S. Broun et al., *McCormick on Evidence* § 249, at 102 & n. 12 (John W. Strong ed., 5th ed.1999). If Martinez heard the victim's statements, then the facts of this case would be remarkably similar to those in *State v. Alvarez*, 216 Conn. 301, 579 A.2d 515 (1990). In that case, the trial court admitted certain statements of a drug dealer made to the defendant that the victim owed him money for drugs and he wanted the victim dead as a result. *Id.* at 519–20. The Supreme Court of Connecticut held that the statements were admissible "not for the truth of the matter asserted therein, but rather to show the effect of the statements upon the defendant" and that "[t]he jury could infer from the statements that the defendant had a motive to kill the victim." *Id.* at 521.

■ {18} However, the record does not clearly establish that Martinez heard or was otherwise aware of the victim's claim that Martinez owed him a debt. "Motive ... is the inducement which impels or leads the mind to indulge in a criminal act." *State v. Segotta*, 100 N.M. 18, 25–26, 665 P.2d 280, 287–88 (Ct.App.), *rev'd on other grounds*, 100 N.M. 498, 672 P.2d 1129 (1983). If Martinez was unaware of the victim's claim, then Defendant's theory that the evidence was not being offered for its truth is difficult to understand. If Martinez was unaware of the victim's claim, but a debt actually existed, Martinez may have known of the debt. In those circumstances, the truth of the testimony would be necessary to provide the motive. *See* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 389, at 417 (James H. Chadbourn rev., 1979) ("[T]he *circumstance* said to have excited the emotion *must be shown* to have probably *become known* to the person; because otherwise it could not have affected his [or her] emotions...."). The victim's statements that Martinez owed him a debt would have been offered for the truth of the matter asserted and thus properly excluded as hearsay under Rule 11–802. If, on the other hand, Martinez heard the claim of a debt, then we could agree with Defendant's argument on appeal that the statement came in the context of an argu-

ment and "it is the fact that there was animosity between Martinez and [the victim] that was at issue, not the legal status of the debt." Under such a scenario, the statement would not have been offered for its truth, and the existence of the debt would not be necessary to establish the motive; it would be sufficient that Martinez heard the accusation.

■ {19} Rule 11–103(A)(2) NMRA 2004 provides that error may not be predicated on the exclusion of evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." *See also Williams v. Yellow Checker Cab Co.*, 77 N.M. 747, 750, 427 P.2d 261, 264 (1967) ("When error is based on an improper exclusion of evidence, an offer of proof is essential to preserve the error for appeal."). An offer of proof is necessary for two purposes. First, an offer of proof is needed "to inform the [district] court so that it may make a reasoned and intelligent decision." *State v. Aragon*, 116 N.M. 291, 294, 861 P.2d 972, 975 (Ct.App.1993). Second, "[a]n offer of proof is needed to enable [the] reviewing court to determine whether exclusion of the particular evidence was reversible error." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.20[1], at 103–33 (Joseph M. McLaughlin ed., 2d ed.2003). To achieve both purposes, the offer of proof must be sufficiently specific to allow the district court to determine in the first instance whether the evidence is admissible and to allow appellate courts in the second instance to review the determination made by the district court.

{20} The offer of proof in this case was insufficient because we cannot determine on appeal whether Martinez heard the victim's statements or not. At trial, the State moved to exclude "any testimony by either Leticia Rodriguez or Candace Campbell pertaining to statements that [the victim] allegedly might have made about Sammy Martinez owing him money and the reason for Sammy Martinez owing him money." Despite stating several grounds for the admission of the testimony, Defendant failed to adequately describe the proffered testimony. If the testi-

mony would have been that Martinez heard the victim's statements, then we believe the evidence should have been admitted because it was not offered to prove its truth and because its probative value appears to have been greater than other considerations. However, if only the witnesses heard the statements, then we believe the district court properly excluded the evidence because it must have been offered to prove its truth and, as the concurring opinion explains, no hearsay exception was applicable. Since the appellate record is unclear on this point, we cannot hold that the district court abused its discretion in excluding the testimony. In view of our disposition, we do not address the issue of whether exclusion of the evidence was harmless error.

### III

{21} We hold that the district court in this case did not abuse its discretion in excluding the testimony of two defense witnesses that may have established a third person's motive to commit the murder for which Defendant was charged. Thus, we affirm Defendant's convictions.

{22} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, RICHARD C. BOSSON, and EDWARD L. CHÁVEZ, Justices.

PATRICIO M. SERNA, Justice (concurring in result).

SERNA, Justice (concurring in result).

{23} I concur in the result reached by the majority, as well as the majority's conclusion that a new rule of admissibility for third party evidence is unnecessary and its holding that Defendant's debt evidence must satisfy our relevancy and hearsay rules in order to be admitted. However, I respectfully disagree with the hearsay analysis and the application of Rule 11–403 NMRA 2004. I instead conclude, based on Defendant's arguments at trial, that the trial court properly excluded the debt testimony as hearsay and properly rejected the argued exceptions to the hearsay rule.

{24} The majority holds, based on the assumption that Martinez did not hear Sharp's statement, that the trial court did not abuse its discretion by excluding the evidence as hearsay. However, the majority also addresses whether the trial court should have excluded the evidence based on the Rule 11–403 balancing test and concludes that this rule "does not afford an opportunity to affirm the district court on an alternative ground." Majority opinion, ¶ 14. We can conclude that the trial court was right for any reason, but we typically do not conclude that the trial court was wrong for alternative reasons when we have also determined that ruling was correct based on the trial court's stated reason. *E.g., Scott v. Murphy Corp.,* 79 N.M. 697, 700, 448 P.2d 803, 806 (1968) ("It is hornbook law that the decision of a trial court will be upheld if it is right for any reason."); *State v. Lovato,* 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct.App.1991). Thus, as the majority concludes that the trial court did not err by excluding the debt testimony as hearsay, I respectfully see no need to resolve the theoretical application of Rule 11–403 when it was not relied on by the trial court. While I agree with the majority that our rules of evidence, including Rule 11–403 and the hearsay rule, adequately protect against the dangers of so-called third-party evidence outlined by other jurisdictions, I am unable to find anything in the record that demonstrates that the trial court excluded the debt statements based on Rule 11–403 or that the trial court's remark that the testimony was too remote refers to this rule. In fact, the parties did not rely on Rule 11–403 in their arguments to the trial court. If the trial court properly concluded, as the majority holds, that the statement was inadmissible hearsay, the trial court would not have reached a Rule 11–403 analysis, which would only apply to otherwise admissible evidence. Thus, I respectfully disagree with applying Rule 11–403 when this issue was not argued by the parties at trial or ruled upon by the court.

{25} I conclude that the trial court correctly determined that the testimony was hearsay based on Defendant's offered use. The majority concludes that if Martinez heard the debt statements, then the testimony "should

have been admitted" as "circumstantial evidence of the motive of the listener." Majority opinion, ¶¶ 17, 20. The majority also concludes that if Martinez did not hear Sharp's alleged debt statements, and "Martinez was unaware of the victim's claim," then "the truth of the testimony would be necessary to provide the motive" and the trial court properly excluded the statements as hearsay. *Id.* ¶ 18. The majority holds that Defendant's offer of proof was insufficient because it is not clear whether Martinez heard Sharp's statements. I respectfully disagree.

{26} I do not believe we should determine whether the statements were hearsay based on who heard them; rather, the statements are hearsay if they were offered to prove the truth of the matter asserted. The majority's analysis addressing whether Martinez heard the statements appears to presume that Defendant offered the testimony to show that Martinez was so affected or "excited [by] the emotion" caused by hearing the statement that he was impelled to kill the victim. *Id.* ¶ 18. However, Defendant did not preserve in the trial court or argue on appeal that the debt testimony should be admitted simply for its effect on Martinez as the listener. Defendant offered the testimony for its truth, to show that a debt existed and that Martinez would rather kill than repay the debt, and he made no argument as to any other proposed use of the statements, such as motive to kill based on injury to Martinez's reputation or the inference that Martinez would have been so enraged by the accusation that he owed money that he would kill. Defendant had the opportunity, during the hearing and outside the presence of the jury, to make the arguments that the majority now contemplates could have been made and to present the statements themselves to the trial court. I do not believe his offer of proof as to who heard the statements affects the propriety of the trial court's ruling with respect to the argument Defendant actually made at trial. Thus, I believe the majority is addressing a defective offer of proof for an argument that Defendant did not make. While I agree with the majority that his offer of proof would not have been sufficient to support motives such as injury to reputation or effect on the listener, Defen-

dant did not assert these motives at trial or on appeal. At trial, Defendant argued that Martinez's motive was that he "found it more profitable to kill Mr. Sharp than pay him back the $5,000;" on appeal, Defendant continues to argue that Martinez's motive was "the large sum of money Martinez owed Sharp[ ]," and Defendant describes what his closing argument at trial could have been had evidence of motive been admitted: "a drug dealer who insists on collecting his money is not a welcome individual." (Emphasis omitted.) I believe that Defendant's offer of proof was sufficient to support his actual proposed use of the evidence, to show that Martinez wanted to get out from underneath a debt itself by killing the lender. I respectfully disagree with basing our decision on a defective offer of proof and alternative non-hearsay use of the debt testimony that Defendant neither preserved nor argued to this Court.

{27} The trial court held a hearing regarding the testimony of two defense witnesses, Rodriguez and Campbell. Their testimony involved a debt Martinez allegedly owed Sharp, threats Martinez made against Sharp, and drugs Martinez allegedly gave or sold to others. Argument on this proposed testimony was convoluted. The prosecutor "move[d] to exclude any testimony ... pertaining to statements that Wayne Sharp allegedly might have made about Sammy Martinez owing him money and the reason for Sammy Martinez owing him money." The prosecutor objected that the debt testimony was hearsay and was not admissible under any exception. Defense counsel did not elaborate on the debt statements or the context in which Sharp made the statements, but asserted that "the evidence of the monetary involvement owed by Sammy to Wayne Sharp is something that will be very important and very interesting for the jury to hear."

{28} In response to the prosecutor's argument that the death threats were hearsay, defense counsel argued that the threats met the state-of-mind exception. *See* Rule 11–803(C) NMRA 2004. The prosecutor then argued that the threats were "too remote" for Rule 11–803(C). After the trial court

asked whether the threat statements were close in time to the murder, defense counsel responded that the threats were made a few weeks before the murder and that Rule 11–803(C) did not require that the threats immediately precede the murder. The trial court then moved on to the debt issue and asked defense counsel how he "proposed to get the money issue in," asking, "What's your exception there? *Obviously it's hearsay.*" (Emphasis added.) Defense counsel argued that the debt statements were not hearsay because they were not offered to prove the truth of the matter asserted. Defense counsel argued that the statements were offered for "[s]tate of mind." The trial court asked, "Money owed is a state of mind?" Defense counsel explained,

> The first [point is] that we're not here on a collection matter, and if we were then that would be the issue in controversy. But I think the money issue, *if it is hearsay* is going to fall within the general exception for general liability under 8–035.[1] It provides Mr. Martinez a motive to kill … Mr. Sharp to get out from underneath a debt. . . .

(Emphasis added.) Defense counsel argued that the victim's statement about the debt was being offered to prove that Martinez "apparently found it more profitable to kill Mr. Sharp than pay him back the $5,000." Defense counsel noted, in response to the trial court's question as to when the debt allegation occurred, that the statements were made several weeks prior to the murder. The trial court excluded the drug sale statements and found that the debt issue was "too far removed" and "too remote," but the court found that Martinez's threats were admissible as a statement of the declarant's then-existing state of mind. As discussed below, I believe that the trial court's finding that the debt issue was too remote was made in response to Rule 11–803(C) and was not a finding related to unfair prejudice, jury confusion, waste of time, or other Rule 11–403 concerns.

{29} Rule 11–801(C) NMRA 2004 defines " 'hearsay' " as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute." Rule 11–802 NMRA 2004.

{30} The testimony pertained to statements that Sharp allegedly made about Martinez owing him money. The testimony thus contains an out-of-court statement made by the declarant, Sharp, that Martinez owed him a debt. Defendant contends that the testimony is not hearsay because he did not offer it for the truth regarding the debt itself, asserting that this was not a trial to enforce the debt. I disagree. Defendant offered Sharp's statement to prove that Martinez had a motive for killing Sharp: Martinez owed Sharp a debt, and Martinez would rather kill Sharp than repay the money. Defendant did not articulate another purpose for this testimony and explained in several different ways that the testimony could tend to establish that Martinez killed Sharp because of the debt itself; Martinez "wanted to get out from underneath a debt." I agree with the trial court that the debt testimony was hearsay. Defendant wished to offer the testimony of Sharp's statements to prove the truth of the matter asserted; if Martinez owed the victim money, he might have had a motive to kill the victim. As the State argues, the victim's statements regarding the debt must first be believed in order to draw the inference of Martinez's motive.

{31} Defendant argues that the testimony is admissible because he offered it to establish motive, relying on *State v. Alberts,* 80 N.M. 472, 474–75, 457 P.2d 991, 993–94 (Ct. App.1969):

> Extrajudicial statements or writings may properly be received into evidence, not for the truth of the assertions therein contained, or the veracity of the out-of-court declarant, but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect on the hearer or reader, and many others.

I reject this argument. The principle in *Alberts* presupposes that the statement is not

---

**1.** It is assumed that defense counsel intended to refer to Rule 11–804(B)(5) NMRA 2004.

being offered for the truth of the matter asserted. *Alberts* did not articulate an exception to the hearsay rule but instead simply reiterated the legitimate uses of non-hearsay evidence. If *Alberts* permitted the admission of statements which were otherwise hearsay but also established knowledge, belief, good faith, reasonableness, motive, and effect on the hearer or reader, the *Alberts* principle would swallow the hearsay rule. The quotation from *Alberts,* upon which the majority also relies, immediately follows the Court's reaffirmation that hearsay statements are inadmissible: "These authorities [relied upon by the proponent of the testimony] correctly state that the exclusionary effect of the hearsay rule is applicable only when the extrajudicial statements or writings are offered to prove the truth of the matter therein stated." 80 N.M. at 474, 457 P.2d at 993. Thus, the meaning of the quotation from *Alberts* relied upon by Defendant is clear when viewed in context; it is merely a re-articulation of the hearsay rule and the fact that statements offered for purposes other than their truth are not hearsay while statements offered for their truth are hearsay. The majority also relies on a treatise, 2 Kenneth S. Broun et al., *McCormick on Evidence* § 249, at 102 (John W. Strong ed., 5th ed.1999), for the proposition that testimony is not hearsay if offered as circumstantial evidence of the listener's motive. However, *McCormick* clarifies that the circumstantial use of such a statement "is not offered for a hearsay purpose because its value does not depend on its truth." *Id.* In the present case, Defendant offered the testimony to show that Martinez would rather kill the victim than repay the debt. Defendant could not show his theory of Martinez's motive without also showing the existence of the debt. By offering the statement to prove the debt, Defendant sought to prove the truth of the matter asserted in the extrajudicial statement. Defendant therefore sought an impermissible testimonial use of the statement as part of his proposed circumstantial use. *See id.*

{32} Thus, the debt statement is not admissible under *Alberts* because, even if it is also offered to demonstrate Martinez's motive, Defendant clearly offered the statement for "the truth of the assertions therein contained." 80 N.M. at 474, 457 P.2d at 993. The alleged debt itself is the basis for Martinez's asserted motive; Defendant offered the testimony to prove that the debt existed in order to support a motive for Martinez. While I agree with defense counsel's assertion that Defendant is not engaging in debt collection, Defendant nonetheless attempted to show that the debt existed in order to infer Martinez's motive. Defendant argues that

> [t]he fact that the jury had to believe there was a debt in order to believed [sic] that Martinez had a motive to murder Sharp does not offend the rule. Even if Martinez and Sharp were mistaken about the existence of the debt, evidence of the argument would be admissible because it is the fact there was animosity between Martinez and Sharp that was at issue, not the legal status of the debt.

However, if Sharp was mistaken or lying, making his statements false, then Martinez would not in fact have owed him a debt, and Sharp's statements that Martinez owed him money would no longer provide the motive for Martinez to kill him asserted by Defendant. Sharp's statements that Martinez owed him a debt must be true in order to provide Martinez the motive of killing him rather than paying the debt. Thus, the truth of the matter asserted, that Martinez owed Sharp money, is critical to why Defendant offered the statements. If Defendant actually wished to offer them to show animosity, as he now argues for the first time on appeal, aside from the lack of preservation and the failure to make any offer of proof both that Martinez heard the statements and that, as the majority accepts, an *argument* even occurred, this use of the statements would clearly be cumulative to Rodriguez's testimony that there was tension between the two men and that Martinez had threatened to kill Sharp. *See State v. Marquez,* 1998–NMCA–010, ¶ 24, 124 N.M. 409, 951 P.2d 1070 ("[T]he trial court in its discretion may properly exclude cumulative evidence.").

{33} The majority bases its hearsay analysis on whether Martinez heard the statements. The majority concludes that if Mar-

tinez heard the debt statements, then the testimony would be admissible as circumstantial evidence of the motive of the listener. First, as discussed above, I respectfully disagree that whether Martinez heard Sharp's debt statements is determinative. Defendant did not offer the statements to show how Martinez reacted simply to hearing the statements themselves and did not argue that the testimony would be admissible as circumstantial evidence of the motive of the listener. Instead, Defendant's sole articulated purpose for offering the statements was to explain why Martinez would have a motive to kill him: by killing the victim, Martinez would not have to repay the debt. Defendant argued that Martinez "apparently found it more profitable to kill Mr. Sharp than pay him back the $5,000." As a result, if the debt existed, Martinez would be aware of it regardless of whether he heard Sharp's statements. In addition, Martinez's hearing the statements would not eliminate the primary dangers of hearsay, which include a mistaken belief or a lie by the declarant. Even if Martinez heard the statements, he would still not have the motive to kill Sharp in order to avoid the debt if Sharp lied about the debt or mistakenly believed it existed. Unless the statements satisfy an exception to the hearsay rule, they are too unreliable to admit as evidence of their truth, that is, the debt, given the absence of adversarial testing, and the identity of the listener does not increase the statements' reliability. Because the truth of the debt is inextricably intertwined with the asserted motive and the purpose for which the statements were offered, I believe that it is not dispositive whether Martinez heard the statement.

{34} My second difficulty with the majority's conclusions is what I view to be an inconsistency with our precedent. In *State v. Balderama*, 2004–NMSC–008, ¶¶ 46–48, 135 N.M. 329, 88 P.3d 845, the State's theory of the case was that the defendant murdered the victim in retaliation for a beating the defendant received from the victim's cousin. In support of this theory, the State sought to admit a statement by the victim to her cousin that the defendant had been holding her against her will for several days. The State countered the defendant's argument that the

statement was inadmissible hearsay by asserting that the statement was not offered to prove the truth of the matter asserted, that the defendant kidnapped the victim, but instead to show the effect on the listener, the cousin. The State argued that the importance of the statement was not dependent on whether it was true; the relevance of the statement was to show what action the listener took upon hearing the allegation of the defendant's conduct. Despite this argument, the majority summarily held that the statement was hearsay. *Id.* ¶ 48. I have difficulty reconciling this conclusory rejection of the State's non-hearsay "effect on the listener" argument with the present matter. Indeed, the State's argument in *Balderama* seems to me to be more in line with the principle articulated in *Alberts* and *McCormick* than the present case. In *Balderama*, the statement was not offered to show that the defendant actually held the victim against her will but was instead offered to show the victim's cousin's motivation to beat the defendant. If the victim in that case had been untruthful or mistaken about whether the defendant held her against her will, the statement would still have the same effect upon the listener and give the listener a motive to beat the defendant. Thus, the evidence was admissible and not hearsay to show that a statement had been made and, regardless of its truth, had an effect on the listener.

{35} In contrast, in the case before us, Defendant's use of the statements to show Martinez's motive is not, to me, dependent on whether Martinez heard Sharp make the statements but is instead dependent on whether Defendant offered them for their truth. Even if Martinez did not hear Sharp mention the debt to Campbell and Rodriguez, Martinez, as the alleged debtor who wished to kill rather than repay the money, would necessarily have been aware that he owed Sharp money if the debt actually existed. However, if the debt did not actually exist, then Martinez would not have had the motive ascribed to him by Defendant even if he heard the statement. Defendant's theory is not that, upon hearing the allegation that he owed Sharp money, Martinez killed Sharp to protect his reputation as one who does not

borrow money, in which case it would not matter whether the debt was owed. Defendant does not argue that the accusation of the debt created a motive but that the debt itself did. Thus, if the debt existed, then even if Martinez did not hear Sharp say to Campbell and Rodriguez that Martinez owed him a debt, the motive to kill would still exist based on the debt itself. The hearsay problem is thus not based on who heard the statements but on the statements' substantive trustworthiness. While in *Balderama* the State was not concerned with the truth of statement for its proposed use, Defendant's reliance on the debt statements are wholly dependent on the truth, or existence, of the debt. Defendant wanted to have the jury to believe the assertions of a debt without any indicia of, or opportunity to examine, the reliability of the assertions. This is precisely the danger protected by the hearsay rule.

{36} The hearsay rule prohibits extrajudicial statements offered for the truth of the matter asserted.

> The reason for the general rule which excludes hearsay evidence unless it comes within one of the recognized exceptions is basically that the sanction of an oath and the test of cross-examination are absent; and the exceptions to the rule have been fashioned where the statements are made under conditions judged to render them equal in reliability and trustworthiness to those which are made under the sanctions described.

*State v. Alvarez*, 216 Conn. 301, 579 A.2d 515, 518–19 (1990) (quotation marks and quoted authority omitted); *accord State v. Taylor*, 103 N.M. 189, 197, 704 P.2d 443, 451 (Ct.App. 1985). The reliability and trustworthiness of Sharp's statements could not be tested under oath and cross-examination. If the statements were untrue, Martinez's alleged motive disappears. I conclude that the trial court did not abuse its discretion by excluding the debt testimony as hearsay.

{37} I also respectfully disagree with the majority's assertion that this case would mirror the facts in *Alvarez* if Martinez heard the statements. The problem in the present case is greater than whether Martinez heard the statements; the problem is that Defendant

never argued that he was offering the testimony to show the effect on the listener. In *Alvarez*, the declarant told the defendant that he wanted the victim killed because the victim owed the declarant money. 579 A.2d at 520–21. The state argued that the statement was admissible because it was offered to show the effect on the defendant. *Id.* at 521. This asserted use of the evidence, however, did not end the court's inquiry. "If the state had offered the statements for the truth of the facts contained therein, the statements would have been inadmissible, unless they fell within an exception to the hearsay rule." *Id.* Thus, the court addressed the state's proposed use of the statements to determine whether it included using the statements substantively for their truth. *Id.* The court noted that the state intended to show "from the statements that the defendant had a motive to kill the victim" *and* that "[i]t is not material whether [the declarant] in fact wanted the victim killed or whether in fact the victim owed [the declarant] money." *Id.* Thus, even if the declarant had lied about the debt or about wanting the victim killed, the effect on the listener, the defendant, would not have changed, and he still would have had a motive to kill the victim based on his belief, even if false, that the declarant wanted the victim killed. The *Alvarez* defendant's motive to kill the victim is not the debt the victim may or may not have owed the declarant but the declarant's request that the defendant kill the victim. The proponent's use of the evidence in *Alvarez* depended only on the fact that the statements were made and not on the truth of the statements' content. Stated another way, the defendant's motive to kill was not to avoid repayment of a debt, as Defendant alleges motivated Martinez, or to collect the debt but instead simply to follow the declarant's directive. The defendant's motive to kill as a favor to the declarant does not depend on the truth of the matter asserted in the declarant's statement that the victim owed the declarant money. These facts, while similar to the state's asserted use of the statement in *Balderama*, are in marked contrast to the present case. The jury could not have believed that Martinez had a motive to kill Sharp to avoid paying him the debt, Defendant's only assert-

ed use of the testimony, without also believing that the debt existed. Thus, while the statements in the present case and *Alvarez* superficially resemble each other by referencing a debt and implying a motive to kill, it is the proposed use of the evidence in this case that distinguishes it from *Alvarez*, and this difference is critical for purposes of the hearsay rule, which defines hearsay based on the statement's proposed use. In fact, in *Alvarez*, the court noted that the defendant could have requested a limiting instruction directing the jury not to consider the statement for its truth. *Id.* n. 4; *accord* 2 Broun et al., *supra*, § 249, at 102 ("[T]he out-of-court statement will frequently have an impermissible hearsay aspect as well as a permissible nonhearsay aspect."). In the present case, such a limiting instruction would have been impossible because Defendant's proposed use of the statements depended entirely on the statements' truth of the existence of the debt. Thus, I respectfully believe that *Alvarez* supports my conclusion that the trial court properly excluded the debt statements as hearsay.

{38} Defendant argued to the trial court that even if the debt testimony was hearsay, the testimony falls under an exception to the hearsay rule under Rule 11–803(C), which allows admission of "[a] statement of the declarant's then existing state of mind ... such as intent, plan, [or] motive." The plain language of the rule allows admission of a statement by the declarant to show the declarant's state of mind. I agree with the State's contention that, while an extrajudicial statement can be used to establish motive, Defendant was instead improperly offering Sharp's statement about a debt to prove Martinez's state of mind, not Sharp's. Sharp was the declarant, not Martinez, so the victim's statement was not admissible to prove Martinez's motive under this exception. *See*

*State v. Baca*, 120 N.M. 383, 389, 902 P.2d 65, 71 (1995) (concluding that "admissibility under [Rule] 11–803(C) should depend upon whether the state of mind itself is of consequence to the determination of the *declarant's* conduct"). Rule 11–803(C) has only been applied to admit statements which demonstrate the declarant's state of mind. *E.g.*, *id.* at 389–90, 902 P.2d at 71–72.[2] Other jurisdictions also apply their analogous rule for statements by the declarant to show the declarant's state of mind, *e.g.*, *Martinez v. State*, 17 S.W.3d 677, 688 (Tex.Crim.App. 2000), and courts have rejected arguments similar to Defendant's proposed use, *e.g.*, *Sybers v. State*, 841 So.2d 532, 545 (Fla.Dist.Ct. App.) (concluding that out-of-court statements offered under analog Rule 11–803(C) "cannot be used to prove the state of mind or motive of someone other than the declarant"), *review dismissed*, 847 So.2d 979 (Fla. 2003); *People v. Hansen*, 327 Ill.App.3d 1012, 262 Ill.Dec. 425, 765 N.E.2d 1033, 1043 (2002) (similar). Thus, the victim's statement about Martinez's debt to him is not admissible under Rule 11–803(C) to prove Martinez's state of mind rather than the declarant's.

{39} Defendant argues that the trial court excluded the evidence because it found the evidence "too far removed" and "too remote" from the murder, not that it was inadmissible hearsay; thus, Defendant argues that the trial court implicitly found that the evidence was not hearsay. The State asks this Court, if we were to conclude that the trial court found the statement to be inadmissible just because it was too remote, rather than because it found the statement to be hearsay, to affirm the trial court as right for any reason, because the issue was addressed below. As stated above, I believe that the trial court was referring to the state-of-mind exception when it found that the testimony was

2. Further, Sharp's debt statement would be inadmissible if it was offered as "a statement of memory or belief to prove the fact remembered or believed," under Rule 11–803(C). *See State v. Gallegos*, 92 N.M. 370, 379–80, 588 P.2d 1045, 1054–55 (Ct.App.1978) (concluding that the comment, "Isn't that the guy that stabbed me?" was a statement of memory and that the trial court did not err in excluding it as hearsay and finding that it did not meet the state of mind exception

and noting that the exclusion of statements of memory is necessary to avoid the elimination of the hearsay rule); *Shepard v. United States*, 290 U.S. 96, 105–06, 54 S.Ct. 22, 78 L.Ed. 196 (1933) ("Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored.").

too far removed. The trial court explicitly stated that the debt testimony was hearsay, and because the trial court was addressing Defendant's contention that the statement was admissible under Rule 11–803(C) as an exception to the hearsay rule, it necessarily found that the statement was hearsay. By finding that the issue was too remote, the trial court could have reasonably found that a statement by the victim concerning a debt was too far removed from demonstrating Martinez's state of mind at the time of the murder. *See United States v. Macey,* 8 F.3d 462, 467–68 (7th Cir.1993) (concluding that a statement made by the defendant to his employee four hours after directing her not to prepare allegedly false invoices was inadmissible because it was not substantially contemporaneous with the event sought to be proven). After stating that the issue was too remote, the trial court then stated, "However, I will let you bring in the statement of the declarant's existing state of mind—then existing state of mind. At the time he made the statement about the ride." In other words, the trial court admitted Martinez's threat as Martinez's state of mind, but rejected Defendant's argument that Sharp's statements about the debt could be used to show Martinez's state of mind or motive. As discussed above, I conclude, under Rule 11–803(C), that Sharp's statements are not admissible to show Martinez's state of mind. Even if the trial court erred in determining that the statements were too remote to show Martinez's state of mind based on time rather than finding that the statements can only show the declarant's state of mind, " '[a] decision of the trial court will be upheld if it is right for any reason.' " *State v. Trujillo,* 2002–NMSC–005, ¶ 15 n. 2, 131 N.M. 709, 42 P.3d 814 (quoted authority omitted). Thus, I agree with the trial court's determination that the testimony was not admissible under Rule 11–803(C).

{40} Defendant argued at trial that if the debt statements were hearsay they were admissible under Rule 11–804(B)(5), which allows admission of a hearsay statement that has "equivalent circumstantial guarantees of trustworthiness" if the trial court determines that the statement is offered as evidence of a material fact, is more probative than other evidence which could be procured, and "the general purposes of the rules and the interests of justice will best be served by admission of the statement." Defendant failed to meet the requirement in this rule to give notice of the statements' use in advance of the trial along with the "particulars of" the statements. Rule 11–804(B)(5)(c). Further, although Defendant had the opportunity to proffer the statements during the hearing and describe the specifics of the statements, he did not do so. Defendant did not argue to the trial court how Sharp's debt statements had equivalent circumstantial guarantees of trustworthiness as required by Rule 11–804(B)(5), *see State v. Coffin,* 1999–NMSC–038, ¶¶ 40–41, 128 N.M. 192, 991 P.2d 477, and I agree with the State that there is nothing in the record showing that the statements had such guarantees. Thus, I conclude that the debt testimony is not admissible under this exception.

{41} Defendant asserts that the trial court's exclusion of his witnesses' testimony is similar to the denial of a defendant's right to cross-examine a witness and argues that this denied him the right to challenge the prosecution's main witness and cast doubt on his motivation to testify truthfully. However, as the State notes, Defendant never sought to cross-examine Martinez about any debt, and in any case, the right to cross-examine a witness to show bias or motive to lie is limited by the rules of evidence. *See Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("[T]he right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."); *State v. Sanders,* 117 N.M. 452, 459–60, 872 P.2d 870, 877–78 (1994). Also, Defendant made no argument to the trial court regarding any limitation on his right to cross-examine Martinez; thus, this argument is unpreserved. Finally, the record demonstrates that Defendant cross-examined Martinez regarding his heavy drug use, the inconsistencies in his statements to police, his unlikely ability to make methamphetamine without Sharp's assistance or a recipe, Martinez's agreement with the State which earned him probation but no jail

time for his involvement in the present matter, his concern for the condition of his vehicle rather than the welfare of Sharp, and the questionable disappearance of the knife, the possible murder weapon, that Martinez used to destroy evidence of the murder, all of which supported Defendant's theory that Martinez had a motivation to direct blame toward Defendant and away from himself and created doubt as to truthfulness of his testimony. The trial court's exclusion of unreliable hearsay did not unconstitutionally impede Defendant from challenging the prosecution's main witness.

{42} Defendant also characterizes his argument as whether he was allowed to present a defense. He contends that the evidence was relevant to prove the guilt of a third party, and relies on Rule 11–402 NMRA 2004 for the proposition that "[a]ll relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules adopted by the supreme court." However, the hearsay rule provides otherwise in the present matter. Defendant appears to argue that, even if the statements are hearsay and do not fall under any exception to the hearsay rule, and are thus inadmissible, the statements should be admitted based on the constitutional right to a fair trial, relying on cases from other jurisdictions. His cases do not support the introduction of otherwise inadmissible evidence based on a defendant's right to a defense; instead, the courts addressed evidence that was admissible. *See, e.g., Moreno v. State,* 418 So.2d 1223, 1225 (Fla.Dist.Ct.App.1982) (holding that because the evidence was "relevant, non-prejudicial, and not inadmissible by any rule of law it should have been admitted"). "Relevance is not the sole criterion of admissibility." *Tome v. United States,* 513 U.S. 150, 163, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). While relevant evidence is generally admissible, the admissibility of hearsay is specifically governed by Rule 11–802. The question here is not whether the victim's statements about the debt were relevant to the defense theory but whether the testimony was admissible under the hearsay rule. *Id.* at 164, 115 S.Ct. 696 ("That certain out-of-court statements may

be relevant does not dispose of the question whether they are admissible.").

{43} In *Alvarez,* 579 A.2d at 517–18, the trial court excluded as hearsay the defendant's offered testimony of a police officer in which the officer heard an eyewitness say that another individual had committed the crime in question. The defendant argued, as Defendant does in the present matter, that a hearsay statement that establishes that a third party committed the crime is admissible as long as the defendant shows some evidence that directly connects the third party to the crime. *Id.* at 518. In other words, the defendant argued "that once he had established the relevancy of the statement, he could offer the statement for the truth of the matter asserted therein." *Id.* The Connecticut court rejected this argument, recognizing that relevancy is merely the first criterion of admissibility:

> Evidence that showed that [a third party], and not the defendant, had shot the victim thus is relevant and would be admissible *provided the evidence was not excluded by some other rule or principle of law.* The determination that the proffered testimony is relevant, therefore, does not end the inquiry. Contrary to the defendant's claim, the court must also determine whether the statement falls within any recognized exception to the hearsay rule. In the present case, the trial court determined that it did not.
>
> We have long recognized that a hearsay statement is admissible only if it falls within an exception to the hearsay rule. . . .
>
> . . . We conclude that the trial court did not abuse its discretion by not admitting [the witness's] proposed testimony as to [the declarant's] hearsay statement merely because it was relevant.

*Id.* (footnote and citations omitted). I reject Defendant's argument that the debt testimony should have been admitted based solely on relevancy when the statements were inadmissible hearsay.

{44} Defendant argues that the "admissibility of third-party evidence" is an issue of first impression and relies on several cases to support his claim that he has a "constitutional right to present a defense" involving third

party evidence. As noted above, I agree with the majority's rejection of this claim and note that the cases upon which Defendant relies do not support a constitutional right to present third party evidence which is otherwise inadmissible. *See, e.g., Larimore v. State,* 317 Ark. 111, 877 S.W.2d 570, 575–76 (1994) (noting that third-party evidence is "generally recognized as *relevant* evidence under fundamental standards," but holding that it may be excluded if its probative value is outweighed by the danger of unfair prejudice and concluding that the trial court did not abuse its discretion by excluding the third party evidence at issue).

{45} The trial court properly allowed Defendant to present testimony supporting his defense theory that Martinez was the murderer by demonstrating the tense relationship between Sharp and Martinez, as well as statements that Martinez wanted to get rid of the victim. Thus, Defendant was properly allowed to present admissible evidence to support his theory of the case based on Martinez's death threats toward the victim, the fact that the victim was killed in Martinez's car, and the fact that Martinez participated in concealing the crime afterward. The only evidence that the trial court excluded and Defendant complains of are the hearsay statements allegedly made by the victim concerning a debt Martinez owed him. As the majority notes, a right to present a defense is subject to the rules of evidence, and Rule 11–802 provides that hearsay is inadmissible.

{46} Finally, even if I agreed that the trial court erred by excluding the testimony, I respectfully believe such error would be harmless. The State presented Alcorta's testimony that he was Defendant's friend, acquainted with Martinez, and not acquainted with Sharp or Sedillo prior to January 17. Alcorta testified that he was present at Martinez's shop on the day of the murder with Sharp, Defendant, Sedillo and Martinez. He stated that he did not see the victim, Defendant, and Sedillo leave the shop, but he testified that Defendant and Sedillo returned in the Blazer. Alcorta, in response to the prosecutor's question regarding what Alcorta and Martinez did while Defendant, Sedillo and Sharp were gone, replied that he smoked

some marijuana, corroborating Martinez's testimony that he and Alcorta worked on a car briefly then smoked some marijuana together while the others were gone. From this testimony, provided by a friend of Defendant's as independent evidence, the jury could reasonably draw the conclusion that Martinez was not present when the victim was murdered. Given that Defendant had the opportunity to present evidence that Martinez committed the crime, including death threats, which the jury rejected based on the strength of the State's evidence against Defendant, I believe that Defendant has not demonstrated that there is a reasonable probability that the exclusion of the debt statements contributed to his conviction. *See* Rule 11–103(A) NMRA 2004; *State v. Apodaca,* 118 N.M. 762, 773, 887 P.2d 756, 767 (1994).