This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                              **No. 32,464**

**DUSTIN E. KIRK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}      Defendant appeals his conviction for receiving stolen property having a value over $20,000. We issued a third calendar notice proposing to affirm, after prior notices proposing first to reverse and then to affirm.  Defendant has responded with a

memorandum in opposition to our latest calendar notice. We have carefully considered the arguments in the memorandum in opposition but are still persuaded that affirmance is warranted, for the reasons discussed below and in our calendar notices.

{2} Our third calendar notice discussed several issues as well as a motion to amend the docketing statement, which we denied. Defendant's memorandum in opposition discusses one of these issues, concerning the trial court's refusal to sever Defendant's trial from that of his brother. As to the other issues, Defendant relies on the argument contained in his prior memorandum in opposition. We have again reviewed those arguments as well as our third calendar notice. For the reasons stated in that calendar notice, we are not convinced by Defendant's arguments. We therefore hold that the district court did not err in allowing a witness to testify about the contents of certain business logs and receipts that implicated Defendant. We also hold that the State presented sufficient evidence to convict Defendant of receiving stolen property having a value over $20,000.

{3} Defendant continues to argue vigorously that the district court erred in refusing to sever his trial from his brother's trial. His argument appears to have two primary components. First, he contends the district court should have granted his brother, Matthew, use immunity for his testimony, so that Defendant could call Matthew to the

stand. Defendant contends Matthew would have provided testimony that would have bolstered Defendant's defense at trial—that he had no knowledge that the copper taken from Matthew's work site, and subsequently sold, had been stolen. **[MIO 4]** Second, he contends that even if Matthew refused to testify and instead invoked his Fifth Amendment rights, in a separate trial Defendant would have been able to have him do so in front of the jury. According to Defendant, having Matthew take the Fifth before the jury would have cast doubt on Defendant's knowledge as to whether the copper was stolen. **[MIO 4]** In sum, Defendant argues that as a result of the district court's refusal to sever the trials he was deprived of his right to present a defense.

{4}        We recognize that Defendant has a fundamental right to present a defense to the charges brought against him. *See State v. Rosales*, 2004-NMSC-022, ¶ 7, 136 N.M. 25, 94 P.3d 768. However, that right is not absolute, and must at times give way to other legitimate interests that are present in the criminal trial process. *See id.* As we have pointed out in our calendar notices, when two or more individuals are charged with carrying out a common scheme or plan, it is preferable to join these individuals' cases for purposes of trial. *See* Rule 5-203(B) NMRA (1992). In this case, Defendant and Matthew were accused of acting together to steal copper from Matthew's employer and then sell that stolen copper. Thus, the common scheme or plan requirement of Rule 5-203(B) was satisfied. It was, then, incumbent on Defendant to

3

establish that the defense he wished to present, in the specific manner he contemplated presenting it, outweighed the State's and the public's interests in holding a joint trial. Defendant attempted to do so by arguing that joinder prejudiced him in the ways enumerated in the previous paragraph. *See* Rule 5-203(C) (providing that court may order a severance if either the defendant or the state is prejudiced by joinder). We therefore turn to an analysis of Defendant's specific claims of prejudice.

{5}     Defendant's first argument is that the district court erred by refusing to sever his trial from Matthew's trial and, in addition, by refusing to grant Matthew use immunity for his testimony. According to Defendant, if the district court had agreed to both of these requests, in a separate trial Matthew would have provided testimony that would have shown that Defendant did not know the copper was stolen. Instead, the Court refused to sever the trials and Matthew invoked his Fifth Amendment rights when Defendant called him as a witness. According to Defendant the combination of the court's refusal to grant Matthew use immunity and the court's refusal to sever the trials deprived Defendant of favorable testimony on the crucial "knowledge" element of the receiving-stolen-property offense.

{6}     As we noted in our last calendar notice, a district court does have the authority to grant use immunity to a defense witness, even over the objections of the prosecutor. *See State v. Belanger*, 2009-NMSC-025, ¶¶ 35-36, 146 N.M. 357, 210 P.2d 783.

However, the district court did not err in refusing to grant Defendant's request in this case. Under *Belanger*, a defendant has the initial burden of showing that the testimony he would like immunized is admissible, relevant, and material to the defense, and that without that testimony his "ability to fairly present a defense will suffer to a significant degree." *Id.* ¶ 38. Defendant completely failed to satisfy this initial burden. He did not make an offer of proof or request any type of in-camera hearing at which he could have provided specific details about the testimony Matthew would supposedly give if he was afforded use immunity. *See, e.g.*, *id.* ¶ 39 (discussing possibility of in-camera hearing at which district court can be informed as to what testimony will be forthcoming if use immunity is granted); *see also State v. Sanchez*, 1982-NMCA-105, ¶¶ 12-13, 98 N.M. 428, 649 P.2d 496 (discussing defendant's offer of proof in connection with request for grant of immunity to a witness), *overruled by Belanger*, 2009-NMSC-025. Instead, Defendant merely stated that if Matthew told the truth, it would not be necessary for Defendant to testify about his lack of knowledge. **[2d MIO 2]** The general assertion that a witness' testimony will be favorable is not sufficient to allow a trial court to reasonably apply the balancing test the Supreme Court has established in *Belanger*. *See* 2009-NMSC-025, ¶ 38. The district court in this case was presented only with such a general assertion, rather than specific information about what testimony would be provided under a

grant of use immunity. Defendant therefore did not meet his initial burden under *Belanger* and the district court did not err in denying his request that Matthew be granted use immunity.

**{7}** We note also that this case appears to be the type of case in which the Supreme Court would not require a grant of use immunity, even if more specific information about the testimony that would have been provided under such a grant had been presented to the district court. In *Belanger* the Supreme Court compared the case before it to other cases in which the State had more compelling reasons to object to a grant of use immunity. *See id.* at ¶¶ 46-47 (discussing *State v. Cheadle*, 1983-NMSC-093, 101 N.M. 282, 681 P.2d 708, and *Sanchez,* 1982-NMCA-105). The Supreme Court pointed out that in both *Cheadle* and *Sanchez* the State had a legitimate interest in prosecuting the witness for crimes related to or described in the testimony proposed to be immunized. *See Belanger*, 2009-NMSC-025, ¶¶ 46-47. Similarly, in this case the State had a legitimate interest in prosecuting Matthew for the copper thefts about which he would have been asked to testify, and in fact was immersed in such a prosecution at the time the issue of immunity arose. The State had a valid interest in avoiding protracted arguments about whether the evidence it was presenting was independent of Matthew's immunized testimony or, instead, was somehow a product of that testimony. *See id.*, 2009-NMSC-025, ¶ 11 (stating that use

immunity precludes the prosecution from using not only immunized testimony, but also any evidence derived from that immunized testimony, in future prosecutions). For this reason as well, we affirm the district court's denial of Defendant's request that Matthew be granted use immunity so that he could testify for Defendant in a severed trial.

{8}   Defendant's second argument as to prejudice, as noted above, concerns Matthew's invocation of his Fifth Amendment right to remain silent.  As we understand what happened below, Defendant called Matthew as a witness at the joint trial.  Out of the presence of the jury, Matthew refused to testify, relying on the Fifth Amendment.  **[1st MIO 3]** Defendant now argues that he should have been granted a separate trial so that Matthew could assert his Fifth Amendment right in front of the jury.  We note, first of all, that there is no indication this specific argument was made to the district court.  According to the recitation of the argument below that is contained in the second memorandum in opposition, no mention was made of any right to have Matthew assert his Fifth Amendment rights in the presence of the jury.  **[2d MIO 1-4]** We therefore do not believe this argument was preserved for purposes of appeal.  *See* Rule 12-216(A) NMRA (1993) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]").  {9}

In addition, Defendant has cited no authority for the proposition that a

defendant is entitled to have a witness invoke the Fifth Amendment in the jury's presence, and we do not believe such authority exists, at least in the absence of highly unusual circumstances. *See State v. Herrera,* 2014-NMCA-007, ¶ 22, 315 P.3d 343 (repeating oft-cited proposition that where a party cites no authority in support of an argument, appellate court may assume no authority exists). Fifth-Amendment jurisprudence is based on the principle that a jury should not be allowed to draw inferences from a person's invocation of the right, and this does not appear to be a case in which departure from that principle was warranted. *See, e.g.*, UJI 14-5031 NMRA (instructing jury not to draw any inference of guilt from a defendant's failure to testify).

{10} Finally, we disagree with Defendant's assertion that Matthew's invocation of his Fifth Amendment rights in front of a jury would have had any possible impact on the jury's consideration of whether Defendant knew or did not know the copper was stolen. Even if the jury drew from Matthew's refusal to testify the impermissible inference that he was guilty, we fail to see how this would have any relevance at all as to Defendant's knowledge. Defendant and Matthew were accused of acting in concert; an event that might make the jury more convinced of Matthew's guilt would not inevitably make that jury less convinced of Defendant's guilt, and in fact might very well have the opposite effect. Thus, even if this argument had been preserved

8

below, the district court's rejection of it would have been proper on the merits—Defendant was not prejudiced because having Matthew invoke the Fifth Amendment in front of the jury would add nothing to Defendant's defense.

{11}    For all of the foregoing reasons we reject Defendant's contention that he was prejudiced by the district court's refusal to sever his trial from Matthew's trial. Furthermore, for the reasons stated in the prior calendar notices and in this opinion, we affirm Defendant's conviction.

{12}    **IT IS SO ORDERED.**


_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Chief Judge**


_____

**M. MONICA ZAMORA, Judge**