This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                        **NO. 31,155**

**FRANCISCO DORADO SARABIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler-Gray, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Defendant was charged in an amended criminal information with ten counts related to child abuse, criminal sexual contact of a minor (CSCM), and criminal sexual penetration (CSP) perpetrated against his daughter (Victim). A jury found Defendant guilty of all charges, and the district court sentenced him to serve fifteen years in the custody of the New Mexico Corrections Department. Defendant appeals his conviction and sentence, asserting nine separate points of error. The State agrees with several of Defendant's legal arguments and concedes the need for modification to the judgment and sentence. Because this is a memorandum opinion and the parties are familiar with the background of this case, we discuss pertinent facts and procedural history as needed within our legal analysis. We affirm in part, vacate in part, and remand for entry of judgment and resentencing consistent with our holding today.

**I.     The District Court Did Not Err in Denying the Admission of a Videotaped Deposition in Lieu of Live Testimony**

{2}     The parties agree that, initially, the State charged Defendant with crimes related to the administration of drugs to Victim.[1] They maintain that Victim had alleged that

---

[1]We cannot locate in the record, nor have the parties cited to or provided, documentation regarding such a charge. Such an allegation is neither lodged in the

2

Defendant had given her pills on several occasions which made her sleep, and when she awoke, her clothing had been disheveled or missing. The State sent a sample of Victim's hair to a laboratory to be tested for the presence of drugs. The test results were negative. The State later learned that it had asked the laboratory to perform an incorrect hair follicle test and ultimately declined to prosecute charges related to the administration of drugs to Victim.

{3}     Prior to trial, Defendant sought discovery regarding the follicular testing of Victim's hair and an opportunity to depose the custodian of records and the technician responsible for the testing. Regarding the deposition request, the motion stated that the "testimony of the technician and/or custodian of record[s] for [the laboratory] is required for admission of the evidence and the costs of subpoenaing the witnesses are prohibitive to Defendant." Defendant's motion, however, did not contain any expression of intent to use the deposition testimony in lieu of live testimony at trial. After his motion was granted, Defendant filed a "Notice of Video Deposition" and video deposed Dr. Lee M. Blum, an employee of the laboratory.

---

original nor amended criminal information. Thus, we rely solely on statements the parties presented to the district court during a pre-trial hearing as to the factual background related to this point of appeal. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [a] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal.").

{4} Prior to trial, the State filed a motion in limine seeking to prevent the admission of evidence related to Victim's previous assertion of having been drugged by Defendant, a charge not pursued by the State. Defendant responded that he sought admission of evidence regarding the laboratory testing in order to impeach Victim's credibility on the basis that the hair test results did not support Victim's initial allegation that Defendant drugged her. Specifically, Defendant contended that Dr. Blum's testimony would establish the absence of any specific drug that Victim had alleged had been administered to her by Defendant. In reply, the State informed the court it had sought the wrong laboratory test on Victim's hair.

{5} Yet Dr. Blum was not present for trial, and when the court sought information regarding his whereabouts, defense counsel responded that he had "taken his deposition pursuant to court order." The State maintained that Defendant had never requested nor had the State stipulated to the admission of the video deposition into evidence. Defendant pointed to his ensuing "Notice of Video Deposition," which stated that this "deposition may be used at trial pursuant to Rule 1-032 [NMRA] of the Rules of Civil Procedure."

{6} Ultimately, the district court granted the State's motion in limine, ordered that neither party was permitted to discuss issues related to the administration of drugs to Victim, and excluded the video deposition. Defendant renewed his objection, stating

that Dr. Blum's testimony was necessary to impeach Victim because "that's the fundamental of a defense; that's the fundamental of the right of confrontation and the right of effective cross-examination." The court nonetheless adhered to its ruling.

{7} Defendant contends that his conviction should be overturned because the district court abused its discretion by denying the admission of Dr. Blum's videotaped deposition. Defendant asserts that his due process rights were violated because the exclusion of the video deposition on the day of trial denied him an essential witness and an opportunity to determine another way to introduce the testimony.

{8} "A criminal defendant has a fundamental right under the Due Process Clause of the United States Constitution to present his own witnesses to establish a defense." *State v. Rosales*, 2004-NMSC-022, ¶ 7, 136 N.M. 25, 94 P.3d 768 (internal quotation marks and citation omitted). However, this right is not absolute or unlimited as it "may at times bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotation marks and citation omitted). Given this limitation, our Supreme Court has held that a defendant's evidence is inadmissible unless it satisfies relevancy and hearsay rules. *Id.* ¶ 8. Relevant evidence is such evidence that has "any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA.

{9}      At the outset, we note that Defendant does not maintain on appeal that Dr. Blum's testimony was relevant to impeaching Victim's credibility. Rather, he solely argues that the district court erred in denying the use of the videotaped deposition in lieu of live testimony when Defendant made clear his intent to the State and district court. Our review of the record reveals that in his motion to depose, Defendant did not indicate he was seeking to use the deposition testimony in lieu of live testimony, but instead that he sought the deposition based upon limited financial resources and on the basis that the laboratory "is not allowed to talk to anyone but the [police department]." The motion contained no statement regarding Defendant's intent to use the deposition in lieu of live testimony. Defendant's ensuing "Notice of Video Deposition" perfunctorily inserted that the "deposition may be used at trial pursuant to Rule 1-032 of the Rules of Civil Procedure."

{10}      Mere reference to a possible use at trial in a subsequent notice, however, does not establish the admissibility of the deposition in lieu of live testimony. Nor does Defendant's mere assertion that he was "sandbagged right before trial with the denial of admissibility of his videotaped deposition in lieu of live testimony[,]" and this violated his right to present his own witness to establish his defense. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181(declining to review an undeveloped argument that would require conjecture about the party's argument).

6

{11} As we have stated, this right to present one's own witnesses to establish a defense is not absolute, and the admissibility of evidence is subject to its relevance. *See Rosales*, 2004-NMSC-022, ¶¶ 6-7. Not only does Defendant not provide us with any argument on the issue of impeaching Victim with the deposition, but neither did he include Dr. Blum's deposition in the record proper for our review. *See State v. Jim*, 1988-NMCA-092, ¶ 3 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues . . . raise[d] on appeal."); *State v. Druktenis*, 2004-NMCA-032, ¶ 44, 135 N.M. 223, 86 P.3d 1050 ("It is [the d]efendant's obligation to provide this Court with a sufficient record proper."). "Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment." *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Because we are unable to review the content of the deposition in order to determine whether the district court abused its discretion, and because we lack argument from Defendant, we have no basis to reverse the district court's ruling and, therefore, affirm its decision to exclude the admission of the deposition.

**II.     The District Court Did Not Err in Limiting Defendant's Cross-Examination of Victim to the Charged Offenses**

7

{12} Defendant maintains that the district court denied his right to meaningfully cross-examine Victim, as guaranteed by the Sixth Amendment to the United States Constitution, when it prohibited cross-examination of Victim regarding the uncharged offenses. Defendant specifically wished to question Victim regarding allegations that Defendant drugged her generally, and that he did so specifically on Halloween night in 2008.

{13} The scope of cross-examination is a matter within the discretion of the district court; however, we review issues pertaining to the violation of the Confrontation Clause de novo. *State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254. The district court "retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (omission in original) (internal quotation marks and citation omitted). We are not persuaded that the district court abused its discretion or that Defendant's right of confrontation was violated.

{14} Defendant argues that by permitting questioning of Victim only in regard to "charges that [were] pending," Defendant was denied the opportunity to challenge Victim's credibility, a strategy "central to [his] defense." Defendant argues that "any

8

testimony that may have indicated that [Victim] was not being truthful, or at least that she may have been exaggerating the allegations against [Defendant], would be essential evidence for the jury to consider in determining [Defendant's] guilt."

{15}     A defendant's right to confront, however, is not absolute. Rather, our Supreme Court has held that the "Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." *State v. Sanders*, 1994-NMSC-043, ¶ 23, 117 N.M. 452, 872 P.2d 870 (internal quotation marks and citation omitted). Based on our review of the record, the hair follicle test results do not appear to impeach Victim's credibility. At trial, the State informed defense counsel and the court that the results were inconclusive as a result of the State's request for the incorrect test. Tellingly, Defendant concedes this point on appeal. Because the tests were wrongly administered and the results therefore inconclusive, nothing about them provided a clear showing that Victim was untruthful in her allegation. Had the jury been exposed to this testimony, it bore the capacity to mislead or confuse the jury regarding an issue collateral to those they were called upon to resolve. As an uncharged offense, the drug issue was not before the jury based on the counts of the amended criminal information and would have been of highly questionable admissibility in any evidentiary capacity. *Cf.* Rule 11-404(B)(1) NMRA

("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *State v. Ruiz*, 2007-NMCA-014, ¶ 28, 141 N.M. 53, 150 P.3d 1003 (discussing Rule 11-404(B), stating "the word 'other' connotes crimes, wrongs, or acts that are not the subject of the proceedings . . . uncharged misconduct"). We too conclude that Defendant's desired line of questioning sought to place at issue an allegation that was uncharged and which, in this instance, could well have resulted in confusion of the issues before the jury. Because such a conclusion is a proper basis for limiting cross-examination, *Smith*, 2001-NMSC-004, ¶ 19, we hold the district court did not abuse its discretion in prohibiting the line of questioning related to Victim's allegation of being drugged by Defendant.

{16}     With regard to the specific event on Halloween night of 2008, Defendant planned to question Victim regarding her claim that he had beaten her while acting out a mock rape scene. Defendant hoped to impeach Victim's credibility to "show that it's impossible that [the incident] took place on that date." The district court expressed concern that the admission of questioning related to this incident might "confuse the jury [as] to something that they are not even considering" and was concerned that the probative value of the evidence was outweighed by the danger of unfair prejudice. The district court then allowed Defendant to question Victim outside the presence of the

10

jury. Afterward, the district court asked about how the defense proposed to impeach Victim. The defense responded that it had two witnesses that would testify that on that Halloween evening, Victim was never alone with Defendant. The judge clarified, "so its their word against her word?" The defense answered affirmatively, and the district court ordered that the inquiry into the events on Halloween night were prohibited.

{17} As with the issue of the drug administration, Defendant's proffered witness testimony failed to establish that Victim was lying. Again, the jury would be put in a position to decide the credibility of both the witnesses and Victim with regard to a matter that was not before it. *Cf.* Rule 11-404(B); *Ruiz*, 2007-NMCA-014, ¶ 28. Moreover, as we have stated, Defendant was not denied the opportunity to cross-examine Victim as to her credibility; the district court merely limited this cross-examination to charged offenses so as not to confuse the jury. *See Sanders*, 1994-NMSC-043, ¶ 23; *Smith*, 2001-NMSC-004, ¶ 19. For these reasons, we determine that the district court did not abuse its discretion, nor was Defendant denied his right of confrontation, and we affirm the rulings of the district court.

**III. Defendant's Convictions of CSCM in the Second Degree are Vacated and Remanded for Entry of Judgment and Resentencing for CSCM in the Third Degree**

{18} Defendant asserts that as to Counts 2, 4, 5, 9, and 10, although charged with CSCM in the second degree, he was actually convicted of third-degree CSCM because

11

the element of "unclothed" was absent from the jury instruction. Unlike CSCM in the third degree, second-degree CSCM requires the additional finding that the defendant engaged in "criminal sexual contact of the *unclothed* intimate parts of a minor." NMSA 1978, § 30-9-13(B)(2003) (Emphasis added). Defendant asserts, and the State concedes, that the jury was improperly instructed regarding the elements of CSCM in the second degree because the word "unclothed" was omitted from the jury instruction. "Although the [s]tate concedes this issue, we are not bound to accept the [s]tate's concession." *State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71. In this circumstance, we agree that the omission of the word "unclothed" from the jury instruction requires us to vacate Defendant's conviction of second-degree CSCM and remand for entry of judgment and resentencing on CSCM in the third degree.

{19}     Our Supreme Court has held that "appellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing . . . when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense." *State v. Haynie*, 1994-NMSC-001, ¶ 4, 116 N.M. 746, 867 P.2d 416. While the application of the "direct-remand" rule is inappropriate where the jury was not instructed on the lesser included offense, *State v. Villa*, 2004-NMSC-031, ¶ 15, 136 N.M. 367, 98 P.3d 1017, here by omitting the element of "unclothed" from the jury instruction, the jury was effectively instructed

on the elements of CSCM in the third degree because the charge is encompassed within the elements for second-degree CSCM. *Compare* § 30-9-13(B) (2003), *with* § 30-9-13(C) (2003). Accordingly, we remand for entry of judgment and resentencing for CSCM in the third degree as to Counts 2, 4, 5, 9, and 10.

{20}    Defendant additionally asserts that his sentences for Counts 1 and 2 as second-degree CSCM felonies are illegal and must be reduced to third-degree felonies because at the time the jury convicted him of committing the crimes, the highest degree of CSCM was a third-degree felony.[2] Defendant, however, does not dispute the legality of the conviction. Once more, the State agrees with Defendant's position. Again, while we are not bound by the State's concession, *see Palmer*, 1998-NMCA-052, ¶ 12, "[w]e review the legality of a sentence under the de novo standard of review." *State v. Williams*, 2006-NMCA-092, ¶ 4, 140 N.M. 194, 141 P.3d 538.

{21}    Defendant was charged with second-degree CSCM, occurring on or between August 1, 1997 and August 31, 1997, pursuant to Section 30-9-13(B) (2003) in Count 1 of the amended criminal information. Defendant was additionally charged with second-degree CSCM occurring on or between August 1, 2003 and May 31, 2006 in Count 2 of the amended criminal information. The jury found Defendant guilty of

---

[2]Having already remanded Count 2 for entry of judgment and resentencing, we need not address it again and solely address Defendant's argument with regard to Count 1.

both counts. At the time the amended criminal information was filed in March of 2010, Section 30-9-13(B) (2003) provided for second-, third-, and fourth-degree felonies of CSCM; however, this was the earliest version of the statute that contained an option for CSCM as a second-degree felony. Pursuant to the prior 1991 and 2001 versions of the statute, the highest degree of CSCM was a third-degree felony. *See* Section 30-9-13(A)(1991); Section 30-9-13(A)(2001). The requisite elements for second-degree CSCM under the 2003 version of the statute and third-degree CSCM under the two prior versions of the statute were identical with the exception of the "unclothed" element that was added to enhance a charge to second-degree CSCM.

{22}    Our Supreme Court has determined that "the law, at the time of the commission of the offense, is controlling." *State v. Lucero*, 2007-NMSC-041, ¶ 14, 142 N.M. 102, 163 P.3d 489 (internal quotation marks and citation omitted). The jury found that Count 1 of CSCM occurred "on or between the 1st day of August, 1997 and the 31st day of August, 1997." Clearly, this crime occurred prior to the Legislature's February 2004 enactment of heightened CSCM liability. As to Count 2, the jury determined that the CSCM occurred "on or between the 1st day of August, 2003 and the 17th day of April, 2005." Because the legislative enhancement became effective during the window of time in which the crime occurred, it is undeterminable whether the jury concluded the crime occurred prior to February 4, 2004 or sometime thereafter. In

14

such a situation, we resolve any doubts in favor of the defendant. *See State v. Ogden*, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845. Because Count 1 could have been committed prior to the Legislature's alteration of the statute and because we resolve any doubt about when the crime occurred in favor of Defendant, his conviction and accompanying sentence on Counts 1 and 2 should have been controlled by the 1991 and 2001 version of Section 30-9-13, respectively, where the highest degree of CSCM was a third-degree felony. *See* Section 30-9-13(A)(1991); Section 30-9-13(A)(2001). As the elements needed to establish third-degree liability were each provided to and found to be present by the jury, we remand to the district court for entry of judgment and resentencing for CSCM in the third degree as to Count 1. *See Haynie*, 1994-NMSC-001, ¶ 4 (holding that "appellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense"); *see also State v. Garcia*, 1978-NMSC-039, ¶ 7, 91 N.M. 664, 579 P.2d 790 ("Where an invalid sentence is imposed following a legal conviction, the prisoner is to be directly remanded to the proper court for a valid sentence."). Accordingly, a remand for entry of judgment and sentencing for CSCM in the third degree as to Counts 1, 2, 4, 5, 9, and 10 is proper.

**IV.    The District Court Did Not Err in Sentencing Defendant to Fifteen Years Pursuant to His Conviction on Count 3 of CSP**

{23}    Defendant next asserts that as to Counts 1, 2, and 3, he received illegal sentences. Because we have already remanded Counts 1 and 2 to the district court, we will not address them again here. As to the third count of CSP, however, Defendant asserts that he received an illegal sentence of fifteen years because the penalty for a second-degree felony not resulting in the death of a human being at the time of the charging period was nine years. NMSA 1978, § 31-18-15(A)(3)(2003). "We review the legality of a sentence under the de novo standard of review." *Williams*, 2006-NMCA-092, ¶ 4.

{24}    Pursuant to the amended criminal information, Defendant was charged with having committed CSP, a second-degree felony, "on or between August []1, 2003 and May 31, 2006." The jury, however, was instructed that in order to find Defendant "guilty of [CSP] of a child," the State must prove beyond a reasonable doubt that the crime occurred "on or between the 17th day of April, 2005 and May 31, 2006." After the jury found Defendant guilty on this count, the district court issued a judgment and sentence stating that Defendant was convicted of CSP in the second degree, "occurring on or between August []1, 2003 and May 31, 2006, as charged in [c]ount 3 of the [a]mended [c]riminal [i]nformation." Pursuant to that conviction, the court sentenced him to fifteen years. Defendant asserts that he was sentenced illegally

16

because the statute in place at the beginning of the charging period listed in the amended criminal information imposed a penalty of nine years for a second-degree felony that did not result in the death of a human being.

{25} As we have stated, "the law, at the time of the commission of the offense, is controlling." *Lucero*, 2007-NMSC-041, ¶ 14. While it is true that for a portion of the charging period asserted in the amended criminal information, the sentence for a second-degree felony not resulting in the death of a human being was nine years. Section 31-18-15(A)(3) (2003). Typically, we would resolve any doubts of when the crime occurred in favor of the defendant. *See Ogden*, 1994-NMSC-029, ¶ 25. In this case, however, the jury was not instructed on the broader charging period asserted in the amended criminal information, but instead on the more narrow period of April 17, 2005 to May 31, 2006. *See State v. Ervin*, 2002-NMCA-012, ¶ 13, 131 N.M. 640, 41 P.3d 908 ("[T]he [s]tate is obligated to make reasonable efforts to narrow the charging time frame."). Because Defendant did not object to the jury instructions, nor did he argue that the jury instructions were erroneous, they serve as the governing law of the case. *See State v. Landers*, 1992-NMCA-131, ¶ 7, 115 N.M. 514, 853 P.2d 1270 (stating that the "jury instructions were the law of the case") *overruled on other grounds by State v. Sosa*, 2009-NMSC-056, 147 N.M. 351, 223 P.3d 348; *Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 40, 132 N.M. 631, 53 P.3d 398 ("Jury

17

instructions not objected to become the law of the case."); *State v. Armijo*, 1999-NMCA-087, ¶ 8, 127 N.M. 594, 985 P.2d 764 ("While it is true that jury instructions become the law of the case[,] . . . errors in jury instructions do not bar retrial[.]" (internal quotation marks and citations omitted)). Prior to the narrowed time period, the Legislature amended Section 31-18-15(A) (2003) to establish a fifteen-year sentence for a "second[-]degree felony for a sexual offense against a child." Section 31-18-15(A)(3)(2003) (listing the date of effectuation as February 3, 2004). Thus, because Defendant was convicted of CSP of a child sometime on or between April 17, 2005 and May 31, 2006, the controlling statute as to Count 3 was the February 3, 2004 amendment of Section 31-18-15(A)(3) (2003).

{26} We do note the inconsistency between the charging period in the Count 3 jury instructions and the judgment and sentence issued by the district court. Although the jury instructions referenced the narrowed time period, the judgment and sentence reflected the charging period contained in the amended criminal information. Because jury instructions serve as the law governing the case, *Landers*, 1992-NMCA-131, ¶ 6, the broader time period indicated in the judgment and sentence constitutes a clerical error on the part of the district court. *See State v. Ross*, 1983-NMCA-065, ¶ 17, 100 N.M. 48, 665 P.2d 310 (stating that oversights or omissions in judgments or orders constitute clerical errors). "Clerical mistakes in judgments or orders, arising from

18

oversight or omission are not deemed jurisdictional, and may be corrected by the court at any time . . . . On remand, correction of the clerical misreference is proper." *Id.* Because Defendant does not dispute the validity of the charge, conviction, or sentence as a second-degree felony, and solely disputes the sentence imposed for the second-degree felony, we affirm the fifteen-year sentence and remand to the district court with instructions that it correct the judgment and sentence to reflect the date range within which the jury determined the offense to have been committed pursuant to the court's instructions.

**V.	The Use of a Prior Jury Instruction as to Count 7 of CSP Did Not Amount to Reversible Error**

{27}	Defendant was charged with second-degree CSP "by the use of force or coercion on a child thirteen to eighteen years of age[,]" occurring on or between August 1, 2007 and May 31, 2008, contrary to NMSA 1978, Section 30-9-11(E)(1)(2007). Section 30-9-11(E)(1)(2007) defines second-degree CSP on a child thirteen to eighteen years of age as "criminal sexual penetration perpetrated . . . by the use of force or coercion." The jury, however, was not instructed on this version of the statute, but instead on a prior version that defined second-degree CSP as "criminal sexual penetration perpetrated . . . on a child thirteen to eighteen years of age when the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit[.]" Section 30-9-11(D)(1)(2003). Pursuant to this

19

instruction, the jury found Defendant guilty. On appeal, Defendant asserts that he received an illegal sentence as to Count 7 because "position of authority" was not an element of CSP when the jury found the crime was committed.

{28}    Defendant is correct that at the time the jury found that Defendant committed CSP, on or between August 1, 2007 and May 31, 2008, the "position of authority" element was not required for a conviction of second-degree CSP. In July 2007, prior to the earliest date that the jury could have found Defendant committed CSP, the Legislature enacted a change to Section 30-9-11 wherein second-degree CSP on a child no longer required that the perpetrator be in a "position of authority over [that child] and use[ that] authority to coerce the child to submit." *Compare* Section 30-9-11(D)(1)(2003) *with* Section 30-9-11(E)(1)(2007). Instead, at the time of the commission of the crime, second-degree CSP of a child thirteen to eighteen years of age consisted of "all criminal sexual penetration perpetrated . . . by the use of force or coercion." Section 30-9-11(E)(1)(2007).

{29}    Because "the law, at the time of the commission of the offense, is controlling," *Lucero*, 2007-NMSC-041, ¶ 14, the 2007 version of the statute, effective July 1, 2007, should have been presented to the jury. However, contrary to Defendant's argument, we do not determine that the use of the inclusion of the "position of authority" element resulted in an illegal conviction. It is established that a defendant has the fundamental

20

right "to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt[,]" and it is the "language of a statute [that] determines the essential elements of an offense." *State v. Cabezuela*, 2011-NMSC-041, ¶¶ 38-39, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citations omitted). Our Supreme Court has held that "[n]oncompliance with the uniform jury instructions in criminal cases is reversible error if the failure eliminates an essential element of the crime in the instruction or if the defendant is prejudiced. Further, there may be fundamental error if the instruction given differs materially from the required instruction." *Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660 (citation omitted).

{30}     The 2007 version of the statute that was controlling at the time the crime was committed requires three essential elements for the commission of second-degree CSP: (1) penetration, (2) "the use of force or coercion," (3) "on a child thirteen to eighteen years of age[.]" Section 30-9-11(E)(1)(2007). The Count 7 instruction provided to the jury stated that in order to find Defendant guilty of Count 7, the State must prove, beyond a reasonable doubt, each of the following elements of the crime:

1.     [D]efendant caused the insertion, to any extent, of the defendant's finger into the anus of [Victim];

2.     [Victim] was at least 13 but less than 18 years old;

21

3.  [D]efendant is a parent, a person who by reason of the defendant's relationship to [Victim] was able to exercise undue influence over [Victim] and used this authority to *coerce* [Victim] to submit to sexual contact;

4.  [D]efendant's act was unlawful;

5.  This happened in New Mexico on or between the 1st day of August, 2007 and the 31st day of May, 2008.

(Emphasis added).

{31} Accordingly, notwithstanding the inclusion of the additional "position of authority" element, each of the three essential elements necessary to convict Defendant was under Section 30-9-11(E)(1)(2007) was contained in the jury instructions. In finding Defendant guilty on Count 7 pursuant to this jury instruction, not only did the jury find that Defendant penetrated Victim; Victim was a child of thirteen to eighteen years of age; Defendant coerced Victim; but it also found that Defendant was in a position of authority over Victim. Although Defendant moved to have Count 7 dismissed at the conclusion of the trial, we cannot find in the record, nor does he cite to any portion of the record, showing that he proffered a substitute jury instruction to the court. "The responsibility for correct instruction rests upon counsel for both the [s]tate and the defendant. Neither the [s]tate nor the defendant tendered the correct instructions to the court." *Jackson*, 1983-NMSC-098, ¶ 6. Because the jury was instructed on all of the essential elements required for a conviction of the version

22

of second-degree CSP in effect at the time the crime was committed, we determine the use of the jury instruction for the 2004 version of the statute did not amount to reversible error. *See id.* (holding that the use of the incorrect instruction was fundamental and reversible error "because [the instruction did] *not* contain necessary elements of the crime not covered in other instructions") (emphasis added). As such, we affirm Defendant's conviction and sentence as to Count 7.

## VI. Defendant was not Denied his Right to a Fair Trial When the District Court Judge Declined to Recuse Herself

{32}    Defendant next claims that he was denied his right to a fair and impartial jury because the district court judge previously made factual findings in a related CYFD case and failed to recuse herself following his motion requesting her recusal. Defendant filed a motion requesting that the district court judge "recuse herself from future proceedings." During the hearing on the motion, counsel for Defendant argued that the judge should recuse herself due to her "familiarity with the CYFD [case] and the factual findings that [she] made." Counsel for Defendant further expressed concern about the appearance of impropriety and the concern that her impartiality may be reasonably questioned. The district judge responded by stating:

> I don't have any personal knowledge about this case. I have none. Any knowledge that I have about this case comes before me in a hearing . . . . I don't think there's any appearance of impropriety in this case . . . . Furthermore, as this case goes to trial, I will not be the finder of fact as you well know. The jury will be.

23

She subsequently denied the motion.

{33}    "We review the denial of a motion to recuse for an abuse of discretion." *State v. Trujillo*, 2009-NMCA-128, ¶ 9, 147 N.M. 334, 222 P.3d 1040. Our Supreme Court has held that "a state cannot deprive any individual of personal or property rights except after a hearing before a fair and impartial tribunal." *Reid v. N.M. Bd. of Exam'rs of Optometry*, 1979-NMSC-005, ¶ 6, 92 N.M. 414, 589 P.2d 198. "[A] fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Purpura v. Purpura*, 1993-NMCA-001, ¶ 14, 115 N.M. 80, 847 P.2d 314. The decision to recuse lies in the discretion of the district court judge and is only required when that judge "has become so embroiled in the controversy that he or she cannot fairly and objectively hear the case." *Trujillo*, 2009-NMCA-128, ¶ 11 (alterations, internal quotation marks, and citation omitted). In order to mandate a recusal, the asserted bias or appearance of bias cannot be based on mere speculation, and the bias "must arise from a personal, extra-judicial source, not a judicial source." *Purpura*, 1993-NMCA-001, ¶ 17; *see Trujillo*, 2009-NMCA-128, ¶ 11.

{34}    We see no basis on which to conclude that Judge Shuler-Gray erred in failing to recuse herself. The judge had no knowledge of this case outside of what she may have garnered during the related CYFD case in which she also served in her judicial

capacity. She explicitly stated that she had no "personal knowledge about this case." On the record before us, whatever information the district court may have had did not arise from a "personal, extra-judicial source," as is required for recusal under our caselaw. *Purpura*, 1993-NMCA-001, ¶ 17; *see id.* (holding that bias based on a district court judge's previous court proceedings with a party do not constitute a personal, extra-judicial source). "To the extent that an appearance of impropriety might be considered, nothing [the d]efendant has shown indicates an appearance of impropriety[.]" *Trujillo*, 2009-NMCA-128, ¶ 12. Furthermore, Defendant was entitled to a trier of fact that was "disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Purpura*, 1993-NMCA-001, ¶ 14 (internal quotation marks and citation omitted). As the district court judge herself notes, she was not serving as the trier of fact in this case; that role fell to the jury. Defendant does not contend that he was denied a fair and impartial jury. Because the district court judge did not have any personal or extra-judicial knowledge about Defendant's case, we conclude that the district court did not err in denying his motion to request recusal.

**VII.   The District Court Did Not Err in Denying Defendant's Motion for Change of Venue**

{35}    Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant asserts

25

that the district court erred in denying his motion for a change of venue because pretrial publicity in the newspapers and on the internet "resulted in a reasonable probability that [Defendant] could not obtain a fair trial" due to the modest size of the city of Carlsbad and the county of Eddy. In presenting this motion to the district court, Defendant argued that the newspaper and the internet presented information approximately four to five months previously that was prejudicial to Defendant. He further argued that the publicity that he received rendered damnable the possibility of an impartial panel of jurors. The district court denied the motion, finding that the published information was "fairly remote in time" because four to five months had passed since any articles were published. Furthermore, none of the published articles were inflammatory. In response to Defendant's concerns, the district court stated that it would allow Defendant the leeway prior to trial to question the jury venire in order to ascertain the potential jurors' knowledge about the case, in an effort to be sure a jury could be impaneled.

{36}    "We review a district court's change of venue decision for an abuse of discretion, keeping in mind that its discretion in [the] matter is broad and will not be disturbed on appeal unless a clear abuse of that discretion can be demonstrated." *State v. Gutierrez*, 2011-NMSC-024, ¶ 39, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). The party appealing carries the burden of establishing a

26

clear abuse of discretion. *Id.* Our Supreme Court has determined that sufficient prejudice "may be established if a community is so saturated by a barrage of inflammatory and biased publicity, close to the beginning of legal proceedings, that the trial inevitably takes place in an atmosphere of intense public passion." *Id.* ¶ 37 (internal quotation marks and citation omitted). There is nothing in the record before us supporting Defendant's claim that he would be unable to obtain a fair trial in Eddy County. The district court found that the publications regarding Defendant were published approximately four to five months prior to trial and were not inflammatory. We determine that Defendant has not established a clear abuse of discretion on the part of the district court, and we will not disturb its ruling on appeal.

**VIII. There is No Cumulative Error Present in the Facts and Circumstances of this Case**

{37}     Lastly, Defendant asserts that the cumulative effect of the errors in this case warrant a reversal of Defendant's conviction. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. The doctrine of cumulative error is to be strictly applied; it may not be successfully invoked "when the record as a whole demonstrates that the defendant

27

received a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). On appeal, Defendant has not shown that his trial was unfair. His mere assertion that the "cumulative impact of all the errors, and potential errors, thus raises severe questions of whether [Defendant] received a fair trial" is not sufficient to establish that he was deprived of a fair trial. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ( "An assertion of prejudice is not a showing of prejudice."). Although we have found errors in the trial proceedings, they went primarily to matters outside the fact finding responsibility of the jury. That some require correction does not undermine the jury's verdict in this case. We hold that Defendant failed to establish prejudice sufficient to justify the grant of a new trial under the doctrine of cumulative error. *See State v. Crews*, 1989-NMCA-088, ¶ 72, 110 N.M. 723, 799 P.2d 592.

**CONCLUSION**

{38} For the foregoing reasons, we affirm Defendant's sentence in part, vacate Defendant's sentence in part and remand to the district court for entry of judgment, resentencing, and the correction of a clerical error in accordance with this Opinion.

{39} **IT IS SO ORDERED.**

_____

                                    **J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**